DAVID N. WOLF (6688)
LANCE F. SORENSON (10684)
SCOTT R. RYTHER (5540)
JASON DUPREE (17509)
Assistant Utah Attorneys General
Office of the Utah Attorney General
160 E. 300 S., 5th Flr
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (385) 584-6509
E-mail: dnwolf@agutah.gov
lancesorenson@agutah.gov
sryther@agutah.gov
jndupree@agutah.gov

*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| PHIL LYMAN,<br><br>*Plaintiff*,<br><br>v.<br><br>DEIDRE HENDERSON, in her official capacity as Lt. Governor of the State of Utah,<br><br>*Defendant*. | **DEFENDANT DEIDRE HENDERSON'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**<br><br>Case No. 4:25-cv-00069-DN-PK<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

## MOTION, RELIEF SOUGHT, AND GROUNDS

Pursuant to Fed. R. Civ. P. 12(b)(1) and DUCivR 7-1(a), Defendant Deidre Henderson, Lieutenant Governor of the State of Utah ("Lt. Governor Henderson") moves the Court for an order dismissing Plaintiff Phil Lyman's ("Plaintiff") Complaint for lack of subject matter jurisdiction. The basis for Lt. Governor Henderson's motion is that Plaintiff has failed to allege facts sufficient to demonstrate that Plaintiff has Article III standing.

## BACKGROUND AND RELEVANT ALLEGATIONS

Plaintiff alleges two claims for relief in his Complaint for violations of the National Voting Rights Act ("NVRA"), 52 U.S.C. § 20507(i).[1]  Plaintiff alleges that "[o]n September 22, 2024, pursuant to the NVRA, [he] requested from the Lieutenant Governor's office" a copy of Utah's statewide voter registration database, including records of voter registrations that are classified as "private" and "withheld" under Utah's Election Code.[2]

Utah Code § 20A-2-104 governs access to Utah's Statewide Voter Registration List.[3]  Under Utah's Election Code, many voter registration records are available to be examined by the public, but there are two categories for which access is restricted: registrations that have been designated as "private," and registrations classified as "withheld."[4]  Any registered voter in Utah may request that their registration be classified as "private."[5] Registrations designated as "private" are not available to the general public; only two categories of individuals may access "private" voter registration records:

---

[1] *See* Complaint (ECF 1) ¶¶ 38-64 at 9-14.
[2] *Id.* ¶ 21 at 7.
[3] *See id.* ¶ 8 at 3.
[4] *See id.* ¶ 9 at 3; *see also* https://vote.utah.gov/obtain-voter-registration-or-election-data/
[5] *See id.* ¶ 11 at 4; Utah Code § 20A-2-104(4)(h).

(1) a government official or government employee acting in the government official's or government employee's capacity as a government official or government employee; and (2) a person described in Subsection (4)(a)(v) or (vi) for a political purpose.[6] The second category is limited to "a political party, or an agent, employee, or independent contractor of a political party," or "a candidate for public office, or an employee, independent contractor, or volunteer of a candidate for public office."[7]

Specific, limited categories of voters may request that their registration records be classified as "withheld" if they or a member of their household is (1) a victim of domestic violence, (2) a law enforcement officer, (3) a member of the armed forces, (4) a public figure, or (5) protected by a protective order or a protection order.[8] Voter registrations designated as "withheld" are not made available to the public or even to those persons who can access "private" records.[9]

Utah law prohibits the disclosure of a voter registrant's date of birth to the public but allows a "qualified person" to obtain a registrant's year of birth.[10] State law defines "qualified person" as including political parties and candidates, among others.[11]

Plaintiff alleges that Utah's provisions under which voter registrations are classified as "private" and "withheld" are in conflict with, and are therefore preempted by, the NVRA, which provides: "Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the

---

[6] *See* Utah Code § 20A-2-104(4)(d)(ii).
[7] *See* Utah Code § 20A-2-104(4)(a)(v), (vi).
[8] *See* Utah Code § 20A-2-104(1)(e)(i)-(iii).
[9] *See* Utah Code § 20A-2-104(2)(a).
[10] *See* Utah Code § 20A-2-104(4)(b).
[11] *See* Utah Code § 20A-2-104(4)(a).

implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters . . . ."[12] (the "NVRA Public Disclosure Provision").

As discussed below, Plaintiff has failed to allege facts sufficient to establish that he has standing to challenge Utah's partial restrictions against public disclosure of voter registrations classified as "private" and "withheld." Accordingly, Plaintiff's Complaint must be dismissed for lack of Article III standing, and therefore subject matter jurisdiction.

## ARGUMENT

### I.     Plaintiff Lacks Standing

Standing is an "irreducible constitutional minimum" requirement for a justiciable case or controversy under Article III. *Lujun v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A party has standing only when the party has: (1) suffered an injury in fact, (2) fairly traceable to the alleged conduct, and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The party invoking federal jurisdiction bears the burden of establishing standing." *Baker v. USD 229 Blue Valley*, 979 F.3d 866 (10th Cir. 2020) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014)). To satisfy this burden at the pleadings stage, a party's complaint must include well-pleaded allegations of fact demonstrating each element. *Spokeo, Inc.*, 136 S.Ct. at 1547.

"Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction, mounting either a facial or factual attack. A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction." *Baker*, 979

---

[12] 52 U.S.C. § 20507(i)(1).

F.3d at 872 (citing *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015)). "A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.*

As discussed below, Plaintiff's Complaint is facially deficient because the allegations fall short of meeting Plaintiff's burden to demonstrate a concrete and particularized injury in fact.

### A.    **Plaintiff alleges violations of the NVRA but does not allege any concrete injury**.

For this Court to determine whether Plaintiff has alleged facts sufficient to show a concrete injury, it is necessary to examine the specific facts Plaintiff alleges. Plaintiff's allegations concerning the nature of injury he claims to have suffered are first introduced in paragraphs 21-32 of Plaintiff's Complaint. Specifically, Plaintiff alleges that he sent a request (via email) to Lt. Governor Henderson's office on September 22, 2024 seeking "a copy of the statewide voter registration database," (including those classified as "private" and "withheld").[13] Plaintiff further alleges that Lt. Governor Henderson's staff merely directed Plaintiff to the Lt. Governor's website where the public voter registration database is made available, excluding those registration records classified as "private" or "withheld."[14] Thus, according to Plaintiff, he was "not provided with, or permitted to inspect, the Statewide Voter Registration List."[15]

Plaintiff further alleges that the Public Interest Legal Foundation ("PILF") wrote to Lt. Governor Henderson on March 7, 2025 asserting that Lt. Governor Henderson was in violation of the NVRA, warning that failure to allow Plaintiff access to the entire Statewide Voter Registration List

---

[13] Complaint ¶ 21 at 7.
[14] *See id.* ¶ 26 at 7-8.
[15] *Id.*

would result in legal action against Lt. Governor Henderson.[16] Plaintiff alleges that he and PILF did not receive any response to PILF's March 7, 2025 letter, that he has not received access to the Statewide Voter Registration List, and that Lt. Governor Henderson's refusal to provide Plaintiff access to all Utah voter registration records "violates the NVRA."[17]

Based on Lt. Governor Henderson's alleged refusal to allow Plaintiff to access all voter registration records in Utah, Plaintiff concludes that he "is a person aggrieved by a violation of the NVRA as set forth in 52 U.S.C. § 20510(b)(1),"[18] and that Plaintiff "will continue to be injured by [Lt. Governor Henderson's] violations of the NVRA . . . ."[19]

Further in "Count I," Plaintiff sets forth his allegations regarding the alleged nature of his injury, which is purely informational, as follows:

> 48.    Defendant's violations of the NVRA are causing Mr. Lyman to suffer a concrete informational injury because he does not have records and information to which he is entitled under federal law. . . .
>
> 49.    By denying Mr. Lyman the ability to obtain the requested voter list maintenance records, Defendant is also impairing Mr. Lyman's ability to, *inter alia*, (1) study and analyze Utah's voter list maintenance programs and activities; (2) assess Utah's enforcement of state and federal voter eligibility requirements; (3) assess Utah's compliance with voter list maintenance obligations; (4) assess whether Utah is employing voter list maintenance best practices; and (5) promote compliance with current obligations and best practices.
>
> 50.    Without access to the Statewide Voter Registration List, Mr. Lyman cannot determine whether election officials are protecting his fundamental right to vote, a right the NVRA explicitly recognizes. 52 U.S.C. § 20501(a)(1).
> . . .

---

[16] *See id.* ¶¶ 27-29 at 8.
[17] *See id.* ¶¶ 30-32 at 8.
[18] *Id.* ¶ 37 at 9.
[19] *Id.* ¶ 36 at 9.

52. Defendant's violations of the NVRA are thus frustrating, impeding, and harming the efforts of Mr. Lyman, a registered voter in Utah concerned about his voting rights and the integrity of elections in his state, to monitor the state of the voter roll in Utah and promote compliance with existing list maintenance obligations and/or promotion of the implementation of best practices in Utah.

53. Mr. Lyman intends to request similar records from the Defendant in the future.

54. Utah law and Defendant's NVRA violations are thus frustrating, impeding, and harming the efforts of Mr. Lyman to carry out his planned activities and protect his right to vote.[20]

As discussed below, even if the allegations set forth in Plaintiff's Complaint establish that Lt. Governor Henderson, by simply adhering to Utah law governing "private" and "withheld" voter registration records, is violating the NVRA (a point of law that Lt. Governor Henderson disputes), this is still not sufficient to establish standing because, under controlling authority, Plaintiff's frustration that he has not been provided access to all Utah voter registrations falls short of establishing a concrete, particularized injury that is personal to Plaintiff.

### B. Statutory violations alone do not demonstrate a concrete injury for Article III Standing.

As set forth above, Plaintiff's Complaint alleges that Lt. Governor Henderson has violated the NVRA by simply failing to make "private" and "withheld" Utah voter registration records available to Plaintiff. Plaintiff reasons, therefore, that because the NVRA provides the public the alleged right to access voter lists and list maintenance records and gives denied persons a private right of action,[21] Plaintiff alleges *he* has been injured by Lt. Governor Henderson's unwillingness to violate state law and Utah voters' privacy.

---

[20] *Id.* ¶¶ 48-54 at 11-12. Plaintiff repeats essentially the same allegations regarding injury in his Count II. *See Id.* ¶¶ 60-62 at 13.

[21] *See Id.* ¶¶ 28-29 at 8.

However, the U.S. Supreme Court has made clear that mere violation of a statutory "right," even where Congress has provided for a private right of action to enforce such a right, does not necessarily establish the kind of particularized injury necessary for Article III standing. *See TransUnion, LLC v. Ramirez,* 594 U.S. 413, 426-27 (2021). In *TransUnion,* a group of plaintiffs alleged that the defendant ("TransUnion"), a credit reporting agency regulated under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et. seq.*, violated the FCRA when TransUnion included within a subset of credit reporting files, potentially inaccurate "name screen" alerts whenever a consumer's first and last names matched names that appeared on the U.S. Department of Treasury's Office of Foreign Asset Control's ("OFAC") list of "specially designated nationals," *i.e.,* persons that Treasury's OFAC believed to be "terrorists, drug traffickers, or other serious criminals" that "threaten America's national security." *See TransUnion,* 594 U.S. at 419-20.

The plaintiffs consisted of a class of 8185 members whose names were mistakenly identified as criminal. Ramirez sought to represent a class of Plaintiffs consisting of 8185 members whose TransUnion credit files were subject to erroneously placed OFAC alerts. However, the parties stipulated that, of the 8185 proposed class members with OFAC flags in their TransUnion credit files, most of the proposed class members had never had their TransUnion credit files disseminated to any third parties by TransUnion. It was undisputed that TransUnion only transmitted the files of 1853 of 8185 class members to entities other than TransUnion or the members themselves. *See id.* at 421-22.

Although both the district court and the Ninth Circuit held that all class members had established standing by showing that TransUnion violated the FCRA, the Supreme Court reversed with respect to the 6332 plaintiffs whose TransUnion credit files with OFAC name match alerts had

never been disseminated to third parties. The Supreme Court held that, for those plaintiffs whose records were merely inaccurate (a possible violation of the FCRA by TransUnion), but that were never disseminated to third parties, the plaintiffs had failed to establish the kind of concrete injury required for Article III standing. *See id.* at 431-439. In so holding, the Supreme Court clarified that the injury requirement for standing is not automatically satisfied merely by the alleged violation of a statutory "right" as follows:

> Importantly, this Court has rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo*, 578 U. S., at 341, 136 S.Ct. at 1540. As the Court emphasized in *Spokeo*, "Article III standing requires a concrete injury even in the context of a statutory violation." *Ibid.*
>
> Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III any more than, for example, Congress's enactment of a law regulating speech relieves courts of their responsibility to independently decide whether the law violates the First Amendment.
>
> . . .
>
> For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. ***But under Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court***.

*Id.* at 426-27 (emphasis added).

      C.      **Alleged violations of the NVRA have been held insufficient, without specific "downstream injury," to satisfy "injury in fact" to establish standing.**

The Supreme Court's decision in *TransUnion* exposes Plaintiff's conclusory assertions as insufficient where concrete injury in fact is concerned. Indeed, Plaintiff merely alleges that the

NVRA provides him with a statutory right to inspect Utah voters' private registration records, but Plaintiff fails to allege any injury other than the "informational injury" he asserts by Lt. Governor Henderson's compliance with her statutory duty to protect voter information classified as "private" or "withheld" under Utah law. Several federal circuits have rejected claims of non-compliance with the NVRA for lack of standing where the plaintiffs' only alleged injury is a violation of the NVRA, without some personal "downstream" injury resulting from the alleged violation.

For example, in *Campaign Legal Center v. Scott*, 49 F.4th 931 (5th Cir. 2022), the plaintiff organization requested certain voter registration records from the Texas Secretary of State, namely, a "list of all . . . registrants [the Secretary's] office identified as potential non-U.S. citizens . . . ." *Campaign Legal Center*, 49 F.4th at 934. When the Texas Secretary of State denied the plaintiff's request on the grounds that the records were protected from disclosure under the Texas Public Information Act, the plaintiff organization sued and prevailed in district court. *See id*. On appeal, the Fifth Circuit reversed, holding that while the plaintiff had alleged a violation of the NVRA, the plaintiff had nevertheless failed to demonstrate any concrete and particularized "downstream consequences" arising from the denial of its request for information. *See id*. at 936-39. Noting the Supreme Court's decision in *TransUnion,* the Fifth Circuit concluded that "even in public disclosure-based cases, plaintiffs *must* and can assert 'downstream consequences,' which is another way of identifying concrete harm from governmental failures to disclose." *Id.* at 938 (emphasis added). In short, under *Campaign Legal Center*, a plaintiff's harm must at least implicate the plaintiff's ability to "participate directly and actively in" elections. *Id.* at 938. Harms like a "[p]laintiffs' lack of opportunity to identify" incorrect voters, for example, does not suffice. *Id.* at 936.

The reasoning in *Campaign Legal Center* is sound. Here, Plaintiff asserts nothing more than a failure by Lt. Governor Henderson to disclose a subset of voter registration records that Plaintiff claims he would like to examine. That harm mirrors the "lack of opportunity" harm that *Campaign Legal Center* dismissed. And Plaintiff underscores the lack of any real downstream consequences by alleging nothing more than the "informational injury" as he characterizes it. Such alleged harms are insufficient under *Campaign Legal Center* and the application of the Supreme Court's recent standing jurisprudence in *TransUnion*.[22]

Many other cases hold that Plaintiff's alleged harm is deficient for standing. In a similar case brought under the NVRA, PILF requested certain voter registration records from the Secretary of the Commonwealth of Pennsylvania, including "all voter records that were referenced in recent news media reports regarding . . . a 'glitch' in PennDOT's Motor Vehicle compliance system." *See Public Interest Legal Foundation v. Secretary of Commonwealth of Pennsylvania,* 136 F.4th 456, 459 (3rd Cir. 2025). PILF alleged concern that the records would show that "non-U.S. citizens have been registering and voting in Pennsylvania for decades." *Id.* In reversing the district court, the Third Circuit noted that PILF's alleged "informational injury" due to the denial of records allegedly in violation of the NVRA, was not the kind of "downstream" injury required for Article III standing. In so holding, the Third Circuit made the following observation, which applies equally to Plaintiff in this case:

---

[22] The Tenth Circuit has also recognized that the allegation of a federal statute violation alone that does not cause some additional, downstream injury particular to the plaintiff is insufficient to establish standing after the Supreme Court's decision in *TransUnion*. *See Laufer v. Looper,* 22 F.4th 871, 881 (10th Cir, 2022) ("An asserted informational injury that causes no adverse effects cannot satisfy Article III.") (quoting *TransUnion,* 141 S.Ct. at 2214).

> Separate and apart from whether PILF has informational injury standing, it bears repeating that, as a general principle of constitutional standing, … while a statute may authorize private suits to compel compliance with the law, *private citizens are not deputized as private attorneys general empowered to enforce any and all violations of a statute without regard to their personal stake in the matter*. . . . PILF [lacks] standing to enforce the provisions of the NVRA in the absence of proof that it maintains a personal and constitutionally significant stake in the matter.

*Id.* at 468 (citations omitted) (emphasis added).

Much like PILF in *Secretary of Commonwealth of Pennsylvania,* Plaintiff alleges primarily that he has suffered "informational injury" in that he claims he cannot "assess" and "monitor" Lt. Governor Henderson's maintenance of the Utah voter registration rolls without the "private" and "withheld" records he demands from Lt. Governor Henderson and her election team. But like PILF in the Third Circuit's recent decision, Plaintiff is not deputized to enforce the NVRA on behalf of all citizens of Utah, which is what Plaintiff allegedly seeks to do here. Nor does Plaintiff have any authority to inspect private voter information in order to propose "best practices" to Lt. Governor Henderson, the Chief Elections Officer of the State of Utah. Plaintiff simply has not alleged (or personally incurred) a particularized and concrete injury sufficient to confer Article III standing.

That Plaintiff is an individual rather than an organization does not absolve him of the injury-in-fact requirement that must establish some downstream, personalized injury that goes beyond the mere denial of access to private voter registration records. As one district court recently observed:

> Federal courts almost universally find that a plaintiff similarly situated to [the individual plaintiff at issue]—who asserts abstract concerns and generalized grievances and fears about vote dilution and election integrity—lack Article III standing to assert those claims. *See, e.g., Maryland Election Integrity, LLC v. Maryland State Bd. of Elections*, 127 F.4th 534, 540 (4th Cir. 2025) ("The vote dilution caused by the counting of an unknown number

of invalid third-party votes affects all voters in a State in the same way. That generalized injury cannot support Article III standing.").[23]

*1789 Found., Inc. v. Schmidt*, No. 3:24-CV-1865, 2025 WL 1285663, at *20 (M.D. Pa. May 2, 2025).

Likewise, in *Public Interest Legal Foundation v. Benson*, 136 F.4th 613 (6th Cir. 2025), the Sixth Circuit recently affirmed a district court's grant of summary judgment against PILF, concluding it lacked standing to sue the Michigan Secretary of State and the Michigan Bureau of

---

[23] *See also Bognet v. Sec. Commonwealth of Pennsylvania*, 980 F.3d 336, 353 (3d Cir. 2020) ("purported vote dilution is also not concrete [injury] because it would occur in equal proportion without the alleged procedural illegality"), *vacated as moot sub nom Bognet v. Degraffenreid*, ––– U.S. –––, 141 S.Ct. 2508, 209 L.Ed.2d 544 (2021); *United Sovereign Ams., Inc. v. Schmidt,* Civ. No. 1:24-CV-1003, 2025 WL 675453, at *3 (M.D. Pa. Mar. 2, 2025) (petitioner "has alleged only that the general integrity of his election will be undermined, and that is not a particularized injury"); *Republican Nat'l Committee v. Benson*, 754 F. Supp. 3d. 773, 776-77 (W.D. Mich. 2024) ("First, the 'fear' upon which the individual Plaintiffs rely is an insufficient basis for properly invoking federal-court jurisdiction. [In addition, the individual plaintiffs'] "subjective concern about the integrity of Michigan elections, including their professed concern about vote dilution, is the type of generalized grievance common to all Michigan residents. These concerns are not particularized to [the individual plaintiffs]."); *Republican Nat'l Comm. v. Aguilar*, Case No. 2:24-cv-00518-CDS-MDC, 2024 WL 4529358, at *3-4 (D. Nev. Oct. 18, 2024) ("First, Johnston's vote dilution claim is nothing more than a generalized grievance. . . . A plaintiff asserts a generalized grievance when they assert 'only the right, possessed by every citizen, to require that the Government be administered according to law. . . . Johnston's fear of vote dilution can be raised by every and any voter in the State of Nevada. Any reduction in individual voting power due to independent acts of voter fraud are felt equally by all voters in Nevada and do not present an individual and personal injury of the kind required for Article III standing."); *Strong Communities Found. of Arizona Inc. v. Richer,* No. CV-24-02030-PHX-KML, 2024 WL 4475248, at *8 (D. Ariz. Oct. 11, 2024) ("Accordingly, even if Cahill's vote was diluted in the colloquial sense plaintiffs allege, that type of dilution does not give Cahill particularized injury in fact because it is also suffered by every other voter. Cahill's voter dilution theory is therefore insufficient to establish her standing."); *Republican Nat'l Comm. v. Burgess*, Case No. 3:24-cv-00198-MMD-CLB, 2024 WL 3445254, at *6 (D. Nev. July 17, 2024) ("Vote dilution has been repeatedly rejected by federal courts, including this Court, as an insufficient injury in fact to support standing when the alleged harm is predicated upon the counting of illegitimate or otherwise invalid ballots and equally affects all voters in a state.") (collecting cases)".

Elections for declining to provide access to certain voter registration records under the NVRA. *See Benson*, 136 F.4th at 629-32. Notably, in *Benson*, PILF asserted almost identical claims of "informational injury" that Plaintiff alleges here, to no avail.

Any insignificant factual differences aside, these cases present the common thread that preventing a desire to assess records is a generalized grievance—not a particularized grievance. So, like the recent cases in which plaintiffs have failed to establish the concrete injury-in-fact based on generalized grievances from alleged violations of the NVRA, Plaintiff has not alleged a specific and particularized injury that is personal to him. Indeed, Plaintiff's allegations assert the type of "injury" that applies to *any* voter or interested citizen in the State of Utah. Thus, Plaintiff's Complaint is facially insufficient to establish Article III standing.

## CONCLUSION

Because Plaintiff fails to allege facts sufficiently establishing that he suffered a concrete and particularized injury, Plaintiff lacks standing, and his Complaint must be dismissed for lack of subject matter jurisdiction.

RESPECTFULLY SUBMITTED THIS 4th day of August, 2025.

OFFICE OF THE UTAH ATTORNEY GENERAL

/s/ Scott R. Ryther
DAVID N. WOLF
LANCE F. SORENSON
SCOTT R. RYTHER
JASON DUPREE
Assistant Utah Attorneys General
*Attorneys for Defendant*