THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| PHIL LYMAN,<br><br>                              Plaintiff,<br><br>v.<br><br>DEIDRE HENDERSON, in her official capacity as Lt. Governor of the State of Utah,<br><br>                              Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT LIEUTENANT GOVERNOR DEIDRE HENDERSON'S [18] MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**<br><br>Case No. 4:25-cv-00069-DN-PK<br><br>District Judge David Nuffer |

Plaintiff Phil Lyman asserts that he has been denied the statutory right under the National Voting Rights Act of 1993 ("NVRA") to inspect the Statewide Voter Registration List of the State of Utah ("Utah voter rolls").[1] Mr. Lyman alleges that Defendant Lieutenant Governor ("Lt. Governor") Deidre M. Henderson violated his federal statutory right by relying on Utah law, which he argues the NVRA preempts, and by denying him access to Utah's voter rolls beyond what is already publicly available.[2] Mr. Lyman claims a continuing informational injury persists despite exhausting every administrative remedy to avoid litigation.[3]

Lt. Governor Henderson moves to dismiss Mr. Lyman's case for lack of standing.[4] The Lt. Governor contends that under *TransUnion v. Ramirez*,[5] Mr. Lyman has "failed to establish . . . concrete injury-in-fact based on generalized grievances from alleged violations of

---

[1] Complaint, docket no. 1, filed June 6, 2025.

[2] *Id*. ¶¶ 21-24.

[3] *Id*. ¶¶ 25, 48.

[4] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) ("Motion"), docket no. 18, filed August 4, 2025.

[5] *Id*. at 8 (*citing TransUnion, LLC v. Ramirez,* 594 U.S. 413, 426-27 (2021)).

the NVRA."[6] The Lt. Governor argues that a statutory injury alone is insufficient. The Lt.

Governor argues that the facts alleged "underscores the lack of any real downstream

consequences by alleging nothing more than the 'informational injury' as [Mr. Lyman]

characterizes it."[7]

Mr. Lyman opposes the Motion asserting, "the Lt. Governor's factual focus in

*TransUnion* steers her legal analysis astray" and is "flat wrong."[8] Instead, Mr. Lyman states that

the holding in *TransUnion* is distinguishable, and that "the standing inquiry is controlled by

*Public Citizens* [*v. United States Dep't of Justice*] and [*FEC v.* ] *Akins*."[9] Mr. Lyman says public

disclosure obligations, like the NVRA, are less like the injuries articulated in *TransUnion*, and

more similar to federal Freedom of Information Act ("FOIA") injuries.[10] On this basis, Mr.

Lyman asks that the Motion be denied.

Lt. Governor Henderson replies stating Mr. Lyman is recycling arguments previously

rejected by the Third, Fifth, and Sixth Circuits.[11] According to Lt. Governor Henderson, each

circuit court "held that plaintiffs asserting mere 'informational injury' under the NVRA [do] not

satisfy Article III standing. And those courts properly applied the Supreme Court's analysis in

*TransUnion*."[12] Accordingly, the Lt. Governor moves for an order that agrees with those circuits

holding that Mr. Lyman has failed to "identify downstream consequences that have a nexus to

---

[6] Motion at 14.

[7] *Id*. at 11.

[8] Lyman's Response to Motion to Dismiss ("Opposition") at 4, docket no. 27, filed August 29, 2025.

[9] *Id*. at 5 (cleaned up).

[10] *Id*. at 2-5.

[11] Lt. Governor's Reply in Support of Motion to Dismiss ("Reply") at 2, docket no. 28, filed September 12, 2025 (citing *Public Interest Legal Foundation v. Secretary Commonwealth of Pennsylvania*, 136 F.4th 456 (3rd Cir. 2025); *Campaign Legal Center v. Scott*, 49 F.4th 931 (5th Cir. 2022); *Public Interest Legal Foundation v. Benson*, 136 F.4th 613 (6th Cir. 2025)).

[12] Reply at 2.

the interest Congress sought to protect with the NVRA." Such a holding would require a dismissal of this case.[13]

      After the parties submitted their briefs, but before this order was issued, the U.S. Court of Appeals for the Tenth Circuit released its opinion in *Voter Reference Found. v. Torrez*.[14] In *Torrez*, the Tenth Circuit addressed standing under the NVRA for the first time since the Supreme Court's decision in *TransUnion*.[15] The Tenth Circuit found standing in *Torrez* because the claim "does not rest on an informational injury; it rests on the statute's chilling effect" as a basis for a threat of criminal prosecution.[16] Because *Torrez* was published after the parties submitted their initial memoranda, supplemental briefing was ordered to address its potential impact on this case.[17] The Lt. Governor submitted her supplemental memorandum on December 19, 2025.[18] Mr. Lyman filed his supplemental brief regarding *Torrez* on January 2, 2026.[19] Mr. Lyman filed a subsequent supplemental notice of the District of Arizona's decision in *Public Interest Legal Foundation v. Fontes*.[20] All submissions have been fully considered in this order.

      A thorough review of the memoranda, exhibits, supplemental briefs, and applicable law has been completed. For the reasons stated below, the Motion is GRANTED. Furthermore, Mr.

---

[13] Reply at 7.

[14] *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025).

[15] *Id.* at 5.

[16] *Id.*

[17] Docket Text Order, docket no. 36, filed December 5, 2025.

[18] Defendant Lt. Governor Henderson's Memorandum Regarding Supplemental Authority in Support of Motion to Dismiss ("Lt. Governor's Supplement"), docket no. 37, filed December 19, 2025.

[19] Plaintiff's Supplemental Memorandum ("Lyman's Supplement"), docket no. 38, filed January 2, 2026.

[20] Lyman's Third Notice of Supplemental Authority ("Fontes Supplement"), docket no. 39, filed January 13, 2026 (*discussing Public Interest Legal Foundation v. Fontes*, No. CV-25-02722-PHX-MTL, 2026 WL 45037 (D. Ariz. Jan. 5, 2026).

Lyman's Motion for Summary Judgment[21] and the Lt. Governor's Motion for Relief under

Federal Rule of Civil Procedure 56(d)[22] are both FOUND MOOT.

1     BACKGROUND ................................................................................................. 4
2     STANDARD OF REVIEW .................................................................................. 7
3     DISCUSSION ...................................................................................................... 9
      3.1    A Statutory Right Does Not Automatically Create an Injury In Fact................... 9
           3.1.1   A Private Right of Action Exists Under the NVRA. ............................... 10
           3.1.2   An Asserted Informational Injury That Causes No Adverse Effects Cannot
                       Confer Article III Standing. ...................................................................... 10
           3.1.3   The Supplemental Authority Informs Without Binding This Case. ......... 16
           3.1.4   Circuit Courts Agree That After *TransUnion* an Informational Injury
                       Without Downstream Consequences Does Not Establish Standing........ 21
4     CONCLUSION................................................................................................... 25
5     ORDER.............................................................................................................. 26

# 1   BACKGROUND

Phil Lyman is a registered voter in the state of Utah.[23] Mr. Lyman has served as County

Commissioner for San Juan County[24] and as a Utah state representative.[25] Most recently, Mr.

Lyman ran for Governor of Utah.[26] Currently, Mr. Lyman does not hold political office in Utah

and is a private citizen. Mr. Lyman brings this suit as a private citizen, seeking voter list

maintenance documents to assess what Mr. Lyman calls the "Statewide Voter Registration List"

(hereinafter "Utah's voter roll").[27]

On September 22, 2024, Mr. Lyman sent a letter to Lt. Governor Henderson's office

requesting "voter list maintenance records," including: "a copy of the statewide voter registration

---

[21] Lyman's Motion for Summary Judgment, docket no. 17, filed July 29, 2025.

[22] Motion for Relief under Federal Rule of Civil Procedure 56(d), docket no. 33, filed November 24, 2025.

[23] Complaint ¶ 3.

[24] *Chilcoat v. San Juan County*, No. 4:19-CV-00027-DN, 2025 WL 3034914 (D. Utah Oct. 30, 2025).

[25] *United States v. Lyman*, No. 2:14-CR-00470 DN, 2019 WL 5310263, at *1 (D. Utah Oct. 21, 2019).

[26] *Lyman v. Cox*, 2024 UT 35, 556 P.3d 49, *cert. denied*, 145 S. Ct. 1057 (2025), *reh'g denied*, 145 S. Ct. 1323 (2025).

[27] Complaint ¶ 3.

database, including data for voters classified as 'private' and 'withheld'".[28] Mr. Lyman requested access to every Utah voter's "year of birth information" which is restricted under Utah law.[29] In the letter Mr. Lyman stated he was entitled to review the Utah voter rolls, despite Utah law forbidding private citizens from having access to these rolls, because the NVRA "as a federal enactment, supersedes and preempts Utah law."[30] Therefore, according to Mr. Lyman, "a denial of [his] request would violate the NVRA." Mr. Lyman alleges that Lt. Governor Henderson never responded to his letter.[31]

In October 2024, Mr. Lyman again wrote to the Lt. Governor's office, again seeking access to records pursuant to the NVRA.[32] On November 4, 2024, the Lt. Governor's office responded, directing Mr. Lyman to the office's website for access to the public version of the Utah voter roll. Regarding Mr. Lyman's request for portions of the Utah voter roll designated "private" or "withheld," the Lt. Governor's office stated that she "does not have discretion to ignore [the] state statute and provide unrestricted access to the state's voter rolls as [Mr. Lyman has] requested."[33] Mr. Lyman says he has yet to be provided with, or permitted to inspect, the portions of the Utah voter roll designated "private" or "withheld."[34]

Mr. Lyman subsequently retained the Public Interest Litigation Foundation ("PILF") as counsel.[35] On March 7, 2025, PILF allegedly sent a letter to the Lt. Governor's office stating that

---

[28] *Id*. ¶ 21.

[29] Id. ¶ 58.

[30] *Id*. ¶ 23.

[31] *Id*. ¶ 24.

[32] *Id.*

[33] *Id*. ¶ 26; Exhibit B to Complaint.

[34] *Id*. ¶ 26.

[35] *Id*. ¶ 27.

she was in violation of the NVRA "for failure to permit inspection of voter list maintenance records as required by 52 U.S.C. § 20507(i)."[36] PILF's letter gave the Lt. Governor 90 days to fulfill Mr. Lyman's request, "or a lawsuit would be filed against her" under 52 U.S.C. § 20510(b) of the NVRA.[37]

Neither PILF nor Mr. Lyman received a response from the Lt. Governor or any other person in her office following PILF's Letter.[38] To date, Mr. Lyman has not been given access to review portions of the Utah voter roll designated "private" or "withheld."[39] Mr. Lyman can see the portions of Utah's voter rolls designated "public" on the Lt. Governor's website.[40]

Mr. Lyman complains that he is injured, and continues to be injured, by the Lt. Governor's actions described above.[41] Mr. Lyman says he has exhausted all administrative remedies before pursing this litigation.[42] Mr. Lyman claims that he has satisfied the pre-litigation notice requirement provided under the NVRA.[43] Should he succeed in this litigation, Mr. Lyman states that he intends to use his access to the Utah voter rolls to pursue legal action to enforce the NVRA and "state voter list maintenance requirements."[44] Mr. Lyman states he "intends to use his findings to propose and promote best practices and solutions for specific and general voter list maintenance problems faced by election officials."[45]

---

[36] *Id*. ¶¶ 27-29; (*citing* the "Notice Letter," Exhibit C).

[37] *Id*.

[38] *Id*. ¶ 30.

[39] *Id*. ¶ 31.

[40] *Id*.

[41] *Id*. ¶ 36.

[42] *Id*. ¶ 25.

[43] *Id*. ¶ 33.

[44] *Id*. ¶ 3.

[45] *Id*. ¶ 3.

## 2   STANDARD OF REVIEW

Lt. Governor Henderson moves to dismiss Mr. Lyman's complaint under Fed. R. Civ. P. 12(b)(1)[46] for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion to dismiss may take one of two forms: the motion may be a facial attack that "questions the sufficiency of the complaint;"[47] or, the motion may be a factual attack that "challenge[s] the facts upon which subject matter jurisdiction depends."[48] When a motion raises a facial challenge to the complaint, "a district court must accept the allegations in the complaint as true."[49] However, on a factual challenge, the court is not required to accept the complaint's allegations as true and "may not presume" that they are true.[50] A factual Rule "12(b)(1) motion is considered a 'speaking motion' and can include references to evidence extraneous to the complaint."[51] And a court enjoys "wide discretion to . . . resolve disputed jurisdictional facts."[52]

"Article III of the [United States] Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"[53] "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."[54] "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'"[55] "This is the threshold question in

---

[46] Motion at 1.

[47] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

[48] *Id*.

[49] *Id*.

[50] *Id*. at 1003.

[51] *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987).

[52] *Id*.

[53] *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, (2013).

[54] *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

[55] *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

every federal case[.]"[56] Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."[57] "For purposes of ruling on a motion to dismiss for want of standing . . . courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."[58]

"Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."[59] "For standing purposes, therefore, an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law."[60] In other words, "under Article III, an injury in law is not an injury in fact."[61] "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."[62] Thus, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." [63]

---

[56] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[57] *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

[58] *Seldin*, 422 U.S. at 501.

[59] *Laufer v. Looper*, 22 F.4th 871, 877 (10th Cir. 2022) (*quoting TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)).

[60] *Looper*, 22 F.4th at 877 (*quoting TransUnion*, 594 U.S. at 425).

[61] *Id*.

[62] *Id.* (quotations omitted).

[63] *Id*.

## 3   DISCUSSION

The parties positioned themselves on opposite sides of an apparent circuit split over NVRA standing.[64] The Lt. Governor urges alignment with the Third, Fifth, and Sixth Circuits, arguing that Mr. Lyman lacks standing because he cannot allege the "downstream consequences" that flow from an informational injury.[65] The Lt. Governor contends that the Tenth Circuit's holding in *Laufer v. Looper* reflects the same reasoning.[66] Mr. Lyman argues that those cases, and *Looper*, are distinguishable. He says his informational injury is akin to a FOIA injury and favors First Circuit precedent he says recognizes standing for informational injuries under the NVRA.[67]

Each side of the apparent circuit split is addressed below, along with *Looper*. The parties' supplemental briefing on *Torrez* has been considered. The precedent is clear: Mr. Lyman's informational injury, standing alone, does not establish NVRA standing.

### 3.1   A Statutory Right Does Not Automatically Create an Injury In Fact

The parties dispute whether Mr. Lyman may proceed. To resolve the standing question, this order proceeds in four steps: (1) whether the NVRA confers statutory standing and creates a private right of action; (2) whether any Tenth Circuit precedent governs; (3) how the Tenth Circuit's decision in *Torrez* informs that inquiry; and (4) how other circuits have addressed the same question and what guidance their reasoning offers here.

---

[64] Motion at 14-16; Opposition at 4-6.

[65] Reply at 2-5.

[66] *Id*. 1-3.

[67] Opposition at 11-13 (*citing Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36, 48 (1st Cir. 2024)).

Though Lyman has statutory standing (an injury in law), that is insufficient to establish a concrete and particularized injury in fact sufficient to establish Article III standing (an injury in fact) for an NVRA claim. Statutory standing alone does not always add up to injury in fact.

### 3.1.1   A Private Right of Action Exists Under the NVRA.

The Tenth Circuit recently confirmed in *Torrez* that the NVRA provides a private right of action.[68] The NVRA expressly provides a private right of action:

**(b) Private right of action**

(1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

(3) If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).[69]

Neither party disputes that the statutory requirements have been met.[70] Therefore, accepting as true all material allegations of the complaint and construing the facts in favor of Lyman as non-movant,[71] the Complaint alleges sufficient facts to establish statutory standing.

### 3.1.2   An Asserted Informational Injury That Causes No Adverse Effects Cannot Confer Article III Standing.

The parties dispute which Supreme Court precedent governs standing under the NVRA. The Lt. Governor contends Mr. Lyman's complaint is "facially deficient because the allegations

---

[68] *Torrez*, 160 F.4th at 1078.

[69] 52 U.S.C. § 20510(b)(1-3).

[70] Motion at 6.

[71] *Seldin*, 422 U.S. at 501 .

fall short of meeting Plaintiff's burden to demonstrate a concrete and particularized injury in fact." [72] The Lt. Governor relies on *Spokeo, Inc. v. Robins* and *TransUnion, LLC v. Ramirez* as controlling authority.[73] Mr. Lyman counters that the NVRA's "standing framework originates with the federal Freedom of Information Act ("FOIA"),"[74] making his informational injury sufficient under *FEC v. Akins*[75] and *Public Citizen v. United States Dep't of Justice*.[76]

In both *Spokeo* and *TransUnion* the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury in fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"[77] Standing presents a threshold question of law that must first be addressed.[78]

"For Article III standing, a plaintiff must have (1) 'suffered an injury in fact,' (2) that is 'fairly traceable to the challenged action of the defendant,' and (3) that is likely to be 'redressed by a favorable decision.'"[79] An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[80] "An asserted informational injury that causes no adverse effects cannot satisfy Article III."[81]

---

[72] Motion at 5-6.

[73] Motion at 3-6.

[74] Opposition at 2.

[75] Complaint ¶ 60 (*citing FEC v. Akins*, 524 U.S. 11, 21 (1998)).

[76] Opposition at 2 (*citing Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 449 (1989)).

[77] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), as revised (May 24, 2016)).

[78] *Comm. to Save the Rio Hondo v. Lucero*, 102 F.3d 445, 447 (10th Cir. 1996).

[79] *Laufer*, 22 F.4th at 876 (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[80] *Id*.

[81] *TransUnion v. Ramirez*, 594 U.S. 413, 441 (2021).

The Lt. Governor cites the Tenth Circuit's decision in *Looper*.[82] In *Looper*, Ms. Deborah Laufer, a self-identified ADA "tester" from Florida, reviewed the Colorado Elk's Run Inn's online reservation system and sued alleging ADA violations.[83] Ms. Laufer stated she intended "in the near future" to "to test [the website] for compliance with 28 C.F.R. Section 36.302(e) and/or to utilize the system to reserve a guest room and otherwise avail herself of the goods, services, features, facilities, benefits advantages, and accommodations of the Property."[84] The district court dismissed for lack of Article III standing, and the Tenth Circuit affirmed. The Tenth Circuit, relying on *Spokeo* and *TransUnion*, held that Ms. Laufer lacked Article III standing because, "the Supreme Court explained that a statutory violation does not necessarily establish injury in fact." Ms. Laufer argued that she sustained an informational injury and therefore had standing under *Akins* and *Public Citizen*.[85] The Tenth Circuit rejected this argument, stating:

> The Supreme Court's recent decision in *TransUnion* shows why this argument fails. In that case the United States, participating as amicus, argued that the plaintiffs had suffered an "informational injury" under *Public Citizen* and *Akins* when TransUnion allegedly failed to provide them with required disclosures in a specified format under the FCRA. The Court rejected this argument in part because "the plaintiffs have identified no 'downstream consequences' from failing to receive the required information." "An asserted informational injury that causes no adverse effects cannot satisfy Article III."[86]

Here, the Lt. Governor argues that *Looper* is applicable because it shows "[t]he Tenth Circuit has rejected [Mr. Lyman's] reading of *Public Citizen* and *Akins*."[87] Mr. Lyman disagrees,

---

[82] *See* Reply at 3 (*quoting Looper*, 22 F.4th at 881 n.6 (10th Cir. 2022)).

[83] *Looper* at 874-75.

[84] *Id.* at 875.

[85] *Id.* at 880.

[86] *Id.* at 880-881.

[87] Reply at 5.

arguing that *Looper* is distinguishable because "[t]he [Tenth Circuit] was well aware of the *TransUnion* decision and interpreted it as being in accord with *Public Citizen* and *Akins*."[88]

Furthermore, his Opposition asserts "Mr. Lyman alleges exactly such an adverse effect" therefore distinguishing *Looper*.[89] The "downstream consequences" Mr. Lyman alleges to have incurred are: (1) the impaired ability to "study and analyze Utah's voter list maintenance programs and activities."; (2) the impaired ability to "assess Utah's enforcement of state and federal voter eligibility requirements."; and (3) the impaired ability to "assess Utah's compliance with voter list maintenance obligations."[90]

The Fourth Circuit in *Laufer v. Naranda Hotels, LLC*[91] held that Ms. Deborah Laufer (the same plaintiff who appeared in *Looper*) possessed Article III standing to sue a hotel owner for violations of the ADA's Hotel Reservation Regulation based solely on an alleged informational injury.[92] Ms. Laufer, acting again as a "tester," visited Naranda's website and discovered they failed to provide accessibility information required by law. [93] Ms. Laufer had no intention of booking a room at the hotel.[94] The Fourth Circuit analogized Ms. Laufer's injury to that of a Fair Housing Act tester in *Havens Realty Corp. v. Coleman*,[95] who possessed standing despite having no intention to rent an apartment because she had been denied "truthful information" to which she was statutorily entitled.[96] The Fourth Circuit reasoned that *Havens Realty* "squarely rejected

---

[88] Opposition at 11-12.

[89] *Id*. at 11-12.

[90] *Id*. at 8.

[91] *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156 (4th Cir. 2023).

[92] *Id.* at 166.

[93] *Id.* at 159–60.

[94] *Id*.

[95] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982).

[96] *Naranda Hotels*, 60 F.4th at 166–67.

any . . . use requirement," holding that a tester's lack of intention to use services "does not negate the simple fact of injury."[97] The Fourth Circuit further emphasized that while plaintiffs in *Public Citizen* and *Akins* had articulated uses for withheld information, "those asserted uses were not a factor in the *Public Citizen* and *Akins* Article III standing analyses."[98]Accordingly, the Fourth Circuit vacated the district court's dismissal and remanded for further proceedings.[99]

The Fourth Circuit expressly disagreed with the *Looper's* reliance on *TransUnion* to impose a "downstream consequences" requirement.[100] In *Looper*, the Tenth Circuit interpreted *Public Citizen* and *Akins* to require plaintiffs to demonstrate "some relevance" by showing an intended use for withheld information beyond litigation.[101] The Fourth Circuit stated that *TransUnion* had distinguished rather than reinterpreted those precedents, differentiating information "received in the wrong format" from a complete "fail[ure] to receive any required information."[102] The Fourth Circuit observed that *Havens Realty* had "squarely rejected any . . . use requirement" of downstream consequences. The Fourth Circuit believed that while the *Public Citizen* and *Akins* plaintiffs had articulated uses for requested information, "those asserted uses were not a factor in the *Public Citizen* and *Akins* Article III standing analyses."[103]

Despite the disagreement between the Tenth Circuit in *Looper* and the Fourth Circuit in *Naranda*, involving the same plaintiff, the same statutes, and nearly identical facts, *Looper* is binding on district courts in the Tenth Circuit. This case does not invoke the Fair Housing Act,

---

[97] *Id.* at 172.

[98] *Id.*

[99] *Id.* at 175.

[100] *Id* at 172 n.7.

[101] *Looper*, 22 F.4th at 881.

[102] *Naranda Hotels*, 60 F.4th at 170.

[103] *Id.* at 172.

the ADA, racial animus, nor any form of discrimination. Mr. Lyman alleges a purely informational injury under the NVRA. Mr. Lyman chose to file this case in the Tenth Circuit where *Looper* controls. *Looper* requires plaintiffs alleging informational injuries to demonstrate that the withheld information has "some relevance" to them beyond the litigation itself.[104]

Mr. Lyman attempts to allege downstream consequences, but it makes no real difference. The consequences Mr. Lyman cites simply repackage his core claim: a desire to monitor and sue the Lt. Governor for alleged NVRA violations.[105] Therefore, like in *Looper*, Mr. Lyman merely seeks to see if the Lt. Governor's office follows the NVRA, which is no different than Ms. Laufer trying to see if the Elk's Run Inn followed the ADA.[106] The Tenth Circuit squarely rejected analogies to FOIA, instead holding that plaintiffs alleging informational injuries must demonstrate "some relevance" of the withheld information beyond the lawsuit itself and identify "downstream consequences" from the regulatory violation.[107]

Mr. Lyman himself has stated he has suffered an "informational injury."[108] Though Mr. Lyman has served as a county commissioner, state legislator, and gubernatorial candidate, all roles that under Utah law would have given him the information he now seeks,[109] he is now a private citizen seeking to oversee the Lt. Governor's NVRA compliance. Mr. Lyman alleges a statutory violation without an injury in fact. Under *Looper*, that is insufficient for Article III standing.

---

[104] *Looper*, 22 F.4th at 881.

[105] *Id*.

[106] *Looper*, 22 F.4th at 879.

[107] *Id*. at 877.

[108] Opposition at 1.

[109] Utah Code § 20A-2-104(4).

Mr. Lyman has not suffered a concrete injury sufficient to establish injury in fact, and he therefore lacks Article III standing.

### 3.1.3   The Supplemental Authority Informs Without Binding This Case.

The parties' successive supplemental briefs document how NVRA jurisprudence continues to develop nationally. Two cases are at the center of the supplemental briefs: (1) *Voter Reference Foundation, LLC v. Torrez*; and (2) *Public Interest Legal Found v. Adrian Fontes*.[110] Both cases have been reviewed and are discussed below. While each case examines the same out-of-circuit precedent at issue here, each is factually distinguishable.

3.1.3.1   *Torrez* Does Not Support Mr. Lyman's Claim Because He Faces No Threat of State Enforcement and his Injury Is Solely Informational.

After the parties issued their respective briefs, the Tenth Circuit ruled on NVRA standing in *Voter Reference Foundation, LLC v. Torrez*.[111] The parties were ordered to provide supplemental briefing on *Torrez*.[112]

In *Torrez*, Voter Reference Foundation ("VRF") published New Mexico's voter data, received from the New Mexico Secretary of State's Office.[113] New Mexico's Secretary of State accused VRF of violating New Mexico's "Use Restrictions" and the "Data Sharing Ban," and referred VRF for criminal investigation and prosecution.[114] New Mexico's Attorney General then forwarded the referral to the FBI, and internal notes from the Secretary's Office recorded an instruction not to fulfill VRF's subsequent voter-data requests.[115] Facing a credible threat of

---

[110] *See* Lt. Governor's Supplement; *see also* Lyman's Supplement; *see also* Fontes Supplement; and Lyman's First Notice of Supplemental Authority, docket no. 35, filed December 4, 2025.

[111] *Torrez*, 160 F.4th at 1.

[112] Docket Text Order, docket no. 36, filed December 5, 2025.

[113] *Id*.

[114] *Id*. at 2.

[115] *Id*. at 3.

prosecution, VRF removed the New Mexico voter data from its website and refrained from further publication despite a stated desire to continue doing so.[116]

VRF issued formal notice under the NVRA identifying the refusal to disclose voter data as a statutory violation, but the Secretary did not cure the violation within the NVRA's required timeline.[117] VRF sued asserting five First and Fifth Amendment claims and sought a preliminary injunction to prevent New Mexico from prosecuting it under the Election Code or restricting its use and publication of voter data.[118] The district court granted VRF's motion for preliminary injunction, which was stayed by the Tenth Circuit.[119] After a one-day bench trial, the district court found the State's refusal to provide voter data was unconstitutional viewpoint discrimination and enjoined the State from enforcing the "Use Restrictions" and the "Data Sharing Ban," against VRF.[120] The State appealed.

Though standing was not raised by either party on appeal, the Tenth Circuit discussed it.[121] The Tenth Circuit observed that the State submitted supplemental authority, relying on *PILF v. Sec'y Commonwealth of Pa.*[122] and *Benson*[123] to contend that VRF lacked standing.[124] The Tenth Circuit distinguished those cases, stating:

> In those cases, plaintiffs had not alleged an injury in fact because they could not show that the unlawful denial of record requests caused a concrete downstream injury . . . But VRF's claim does not rest on an informational injury; it rests on the statute's chilling effect. VRF faces possible criminal investigation and

---

[116] *Id.*

[117] *Id.*

[118] *Id.*

[119] *Id.* at 4.

[120] *Id.* at 5.

[121] *Id.* at 1078.

[122] *Id.* (*citing Sec'y Commonwealth of Pa.*, 136 F.4th at 465–69).

[123] *Id.* (*citing Benson*, 136 F.4th at 629).

[124] *Id.* at 5.

> prosecution based on the Secretary's criminal referral letter to the Attorney General and FBI, indicating that VRF's conduct is proscribed by New Mexico's Election Code. [125]

Due to the threat of criminal prosecution, the Tenth Circuit found that VRF had standing.[126]

Here, both parties agree that *Torrez* "does not address standing in this case."[127] The Lt. Governor affirms "*Torrez* is of no help to Plaintiff here."[128] Mr. Lyman states that the injury in *Torrez* is "wholly dissimilar from Mr. Lyman's injury and so has no bearing on the pending motion to dismiss."[129] After distinguishing the facts of *Torrez*, Mr. Lyman distinguishes the holding of *Torrez*:

> *Torrez* did not address whether the denial of a public records request constitutes a concrete injury under Article III. That question was not presented by the facts before the court, and the Tenth Circuit appropriately did not decide it. *Torrez* involved a wholly different and unrelated injury than the one alleged here.[130]

Finally, both parties spotted the Tenth Circuit's carve out in *Torrez* for informational injuries[131] when the Tenth Circuit stated, "VRF's claim does not rest on an informational injury; it rests on the statute's chilling effect." [132] Mr. Lyman himself has admitted the facts of his case are distinguished from *Torrez*.[133] Therefore, the calculus is straightforward. Both parties agree *Torrez* is distinguished because Mr. Lyman has alleged only an informational injury, and the Tenth Circuit itself carved out informational injuries from *Torrez*'s reach. *Torrez* does not apply.

---

[125] *Torrez*, 160 F.4th at 1078.

[126] *Id.* at 6.

[127] Lyman's Supplement at 2.

[128] Lt. Governor's Supplement at 5.

[129] Lyman's Supplement at 1.

[130] *Id.* at 4.

[131] *Compare* Lt. Governor's Supplement at 1 *and* Lyman's Supplement at 2 *referencing Torrez*, 160 F.4th at 1068.

[132] *Torrez*, 160 F.4th at 1078.

[133] Lyman's Supplement at 2-3.

The parties do not dispute[134] that the Tenth Circuit's holding in *Torrez* is consistent with *Looper.* The viewpoint discrimination presented in *Torrez* meets the "concrete interest" or "injury in fact" that the Tenth Circuit stated in *Looper* is necessary to establish standing post-*TransUnion*.[135] Therefore, *Torrez* represents a narrower holding in the NVRA context that builds on *Looper*: a credible claim of viewpoint discrimination establishes a concrete injury in fact, and when paired with the NVRA's private right of action, a party has standing to sue. Absent impairment of a concrete interest, however, an informational injury alone is insufficient to confer standing under the NVRA.

Both *Looper* and *Torrez* show that not all statutory rights create a concrete harm, and that standing under the NVRA requires more than a mere informational injury.

### 3.1.3.2     *Fontes* Informs Without Governing This Case.

After briefing closed, after the Tenth Circuit's *Torrez* decision, but before this order was issued, another NVRA ruling emerged from the District of Arizona in *PILF v. Fontes*.[136] In *Fontes*, PILF who serves as counsel for Mr. Lyman in this case, requested all Electronic Registration Information Center ("ERIC") Retraction Reports and related correspondence from Arizona Secretary of State Adrian Fontes under the NVRA.[137] Secretary Fontes moved to dismiss for failure to state a claim, arguing PILF lacked standing under *TransUnion*.[138] PILF countered, as it does here, that *Public Citizen* and *Akins* confer standing.[139]

---

[134] *Compare* Lt. Governor's Supplement at 1; *and* Lyman's Supplement at 2.

[135] *Compare Looper*, 22 F.4th at 879 *with Torrez*, 160 F.4th at 1068.

[136] *Public Interest Legal Foundation v. Fontes*, No. CV-25-02722-PHX-MTL, 2026 WL 45037 (D. Ariz. Jan. 5, 2026).

[137] *Id*. at *1.

[138] *Id*. at *2.

[139] *Id*. at *3.

The district court denied the motion to dismiss. First, Judge Liburdi rejected PILF's reliance on *Public Citizen* and *Akins,* applied *TransUnion* instead, and held "[b]ecause [PILF] alleges an informational injury, it must also show a nexus between the downstream consequence, the alleged harm, and the concrete interest Congress sought to protect."[140] Second, Judge Liburdi found PILF's alleged downstream consequences sufficient for standing. In coming to that determination Judge Liburdi distinguished all out-of-circuit precedent[141] and applied binding Ninth Circuit precedent, most notably *Mi Familia Vota v. Fontes*.[142] In *Mi Familia Vota*, the Ninth Circuit held that plaintiffs had standing to request the same records PILF sought, against the same Arizona Secretary of State, under the same NVRA provisions.[143] Bound by that precedent, Judge Liburdi ruled PILF's downstream consequences established standing.[144]

*Fontes* informs without governing. Judge Liburdi applied *TransUnion*, distinguished out-of-circuit precedent, and followed binding circuit authority. This order does the same but reaches a different result. Geography determines the outcome. While Judge Liburdi could distinguish *Looper* and was bound by *Mi Familia Vota*, the opposite holds true here. In the Tenth Circuit, *Looper* binds and *Mi Familia Vota* persuades at most. As discussed above, *Looper* mandates dismissal.

---

[140] *Id*.

[141] *Id*. (*distinguishing Scott*, 49 F.4th at 938; *Looper*, 22 F.4th at 881; *Benson*, 136 F.4th at 630 n.11; *Sec'y of Pa.*, 136 F.4th at 466).

[142] *Id*. (*citing Mi Familia Vota v. Fontes*, 129 F.4th 691, 717 (9th Cir. 2025)).

[143] *Mi Familia Vota*, 129 F.4th at 710-715.

[144] *Fontes*, No. CV-25-02722-PHX-MTL, 2026 WL 45037 at *4-5.

### 3.1.4 Circuit Courts Agree That After *TransUnion* an Informational Injury Without Downstream Consequences Does Not Establish Standing.

It appears at first glance that the parties have taken opposite sides of a circuit split arising post-*TransUnion*. The Lt. Governor favors the Fifth, Third, and Sixth Circuits as the "three federal courts of appeals [that] have rejected '[information injury as sufficient for Article III standing] in NVRA cases."[145] Mr. Lyman praises the First Circuit's position in *Public Interest Legal Fund v. Bellows*[146] and asserts that "Courts across the country have recognized that statewide registration lists fall squarely within this statutory mandate."[147] A closer look reveals no split at all, and instead the circuits apply a single rule: if there is no threat of state enforcement, there is no injury in fact.

After *TransUnion* was decided in 2021, the Fifth Circuit was the first to address standing under the NVRA in 2022 in *Campaign Legal Center v. Scott*.[148] In *Scott*, Campaign Legal Center identified more than 11,000 registered voters in Texas as potential non-citizens based on Texas Department of Public Safety records.[149] Campaign Legal Center wrote to the Texas Secretary of State for voter-specific information to evaluate the accuracy of the Texas's electoral process.[150] The Texas Secretary of State refused to disclose the requested records. Campaign Legal Center sued under the NVRA alleging that Texas had unlawfully withheld information the NVRA requires to be made available for public inspection. The district court, after determining that there was standing to bring the case, issued an injunction requiring the State of Texas to provide

---

[145] Reply at 3 (*citing Sec'y Commonwealth of Pa.*, 136 F.4th at 456; *Scott*, 49 F.4th at 931; *Benson*, 136 F.4th at 613).

[146] *Bellows*, 92 F.4th at 54.

[147] Opposition at 13 (*citing Bellows*, 92 F.4th at 47).

[148] 49 F.4th at 931.

[149] *Id.* at 934.

[150] *Id.*

information requested.[151] On appeal the Fifth Circuit reversed, holding that after *TransUnion,* the

Campaign Legal Center did not have standing.[152] The Fifth Circuit analyzed Supreme Court

precedent:

> Even if Plaintiffs had a right to the records sought, an issue we do not reach, they
> have not established an injury in fact. *Spokeo* implied and *TransUnion* held that
> "under Article III, an injury in law is not an injury in fact." *TransUnion* generally
> rejected the Attorney General's advocacy for an unlimited "informational injury"
> approach to standing, in part by explaining that "the plaintiffs have identified no
> 'downstream consequences' from failing to receive the required information.'" As
> this court recently observed, *TransUnion* rejected "the proposition that 'a plaintiff
> automatically satisfies the injury-in-fact requirement whenever a statute grants a
> person a statutory right and purports to authorize that person to sue to vindicate
> that right.'"[153]

The Fifth Circuit applied this analysis to Campaign Legal Center's claims for standing.[154]

Campaign Legal Center argued a statutory right to the "visibility" of the Texas's process, to

which they were denied. The Fifth Circuit stated this was not enough, because "absent concrete

and particularized harm to [Campaign Legal Center] from not obtaining the requested personal

voter information, they assert no cognizable injury in fact."[155] The Fifth Circuit reversed and

remanded with instructions to dismiss the case.[156]

Following *Scott*, the Third and Sixth Circuits adopted the same basic rule: "failure to

articulate specific downstream consequences demonstrates [a failure] to show a sufficient injury

to confer Article III standing."[157] In *Sec'y Commonwealth of Pa.*, PILF, which represents Mr.

Lyman here, sent multiple letters to Pennsylvania's Secretary of the Commonwealth after the

---

[151] *Id*. at 932.

[152] *Id*. at 939.

[153] *Id*. at 937.

[154] *Id*.

[155] *Id*.

[156] *Id*. at 939.

[157] *Benson*, 136 F.4th at 632.

Secretary disclosed that a "glitch" in a state computer system had allowed ineligible persons to register to vote while applying for or renewing driver's licenses or vehicle registrations.[158] Though the Secretary gave PILF some records, all the records requested were not provided and PILF filed suit.[159] On appeal, PILF argued, as they do here, that *Public Citizen* and *Akins* govern standing under the NVRA.[160] The Sixth Circuit disagreed, stating as follows:

> One can dispute whether *TransUnion* raised the bar in terms of the adverse consequences that must be alleged to satisfy the standing requirements in different statutory settings . . . [b]ut it set the standard we must follow. And under the Supreme Court's standard, statutory context is important. Here, as in *TransUnion*, we are presented with a statute with a purpose that goes farther than government transparency such as FOIA. The required disclosure of certain records is merely one aspect of the statutory scheme in service of a greater purpose—that is, as we explain below, *the expansion of voter participation in federal elections.*[161]

The Sixth Circuit applied *TransUnion*, vacated the District Court's orders, and remanded with instructions to the District Court to dismiss the case.[162]

In *Benson* (in the Sixth Circuit), PILF sent multiple letters to the Michigan Secretary of State regarding deceased registrants on the active voter rolls.[163] After not getting the results they wanted, PILF filed suit under the NVRA to obtain voter rolls in Michigan.[164] On appeal, the Sixth Circuit specifically noted that PILF had raised identical arguments before the Third Circuit, and called the arguments "unavailing."[165] The Sixth Circuit noted that the Third Circuit found

---

[158] *Sec'y Commonwealth of Pa.*, 136 F.4th at 459.

[159] *Id*. at 460.

[160] *Id*. at 462.

[161] *Id*. at 463.

[162] *Id*. at 470.

[163] *Benson*, 136 F.4th at 632.

[164] *Id*. at 632 (*citing Sec'y Commonwealth of Pa.*, 136 F.4th at 468).

[165] *Id*. at 631.

PILF "failed to identify some *specific* adverse downstream consequence for its mission or future plans." The Sixth Circuit followed the Third and the Fifth and rejected PILF's arguments.[166]

Though PILF failed in the Third and Sixth Circuits, they prevailed before the First Circuit in *Bellows*.[167] PILF requested Maine's voter roll under the NVRA, and acknowledged that a state statutory exception barred PILF's intended uses.[168] Maine's Deputy Secretary of State denied the request, stating she lacked authority to release the file, and PILF sued.[169] While the case was pending, the Maine Legislature adopted a new statutory exception, which allowed access for voter-list-maintenance review but imposes civil penalties of up to $1,000 for misuse.[170]

On appeal, Maine argued that PILF lacked standing because the State would not treat PILF's conduct as a violation.[171] The First Circuit rejected that position, holding that Maine's position was not "nonenforcement" but that "these statements [of the Secretary of State to refrain from prosecution] do not have the force of law and are not binding on future officeholders."[172] In other words, because PILF still faced a possibility of enforcement under the new state exception from a different administration, the First Circuit held that PILF had standing.[173]

The out-circuit-cases use legal reasoning consistent with Tenth Circuit precedent. The holdings from the Fifth, Third, and Sixth Circuits found no standing for cases that only presented an informational injury. This is exactly what the Tenth Circuit stated in *Looper*: "an injury in law

---

[166] *Id*. at 632 (*citing Sec'y Commonwealth of Pa.*, 136 F.4th at 469).

[167] *Bellows*, 92 F.4th 36.

[168] *Id*.at 43.

[169] *Id*.

[170] *Id*.

[171] *Id*. at 50.

[172] *Id*.

[173] *Id*. at 50-51.

is not an injury in fact."[174] The First Circuit, and now the Tenth Circuit in *Torrez*, found a party had standing when there was the threat of either civil or criminal enforcement. The circuits are not in conflict.

Mr. Lyman concedes that his only injury is informational,[175] and nothing in the record shows any threat that Utah may enforce its laws against Mr. Lyman through civil penalties or criminal prosecution. Mr. Lyman has not alleged any threat of civil enforcement by the Lt. Governor, and none appears in the Lt. Governor's filings. Without a real enforcement risk, *Torrez* and *Bellows* do not support a finding of standing. The simple rule is this: if there is no threat of state enforcement, there is no injury in fact. The persuasive holdings in *Benson*, *Scott*, and *Secretary of Pennsylvania*, along with the binding rule in *Looper*, make clear that informational injuries alone cannot establish standing under the NVRA after *TransUnion*. Granting the Lt. Governor's Motion to Dismiss is therefore appropriate.

## 4   CONCLUSION

Mr. Lyman has satisfied the NVRA's statutory prerequisites for suit, but statutory violation does not provide Article III standing. Article III requires more than a statutory right and an informational injury; it demands a concrete harm. The Supreme Court made this clear in *TransUnion*, and the Tenth Circuit has applied that rule in both *Looper* and *Torrez*. Mr. Lyman only wants information to monitor the Lt. Governor's compliance with the NVRA. He faces no threat of prosecution; no civil penalty; no viewpoint discrimination; and no adverse consequence beyond being denied access to data he seeks. That is no more than an informational injury, Mr. Lyman falls short of Article III's threshold requirement. Without a concrete harm; enforcement

---

[174] *Looper*, 22 F.4th at 877 (*quoting TransUnion*, 594 U.S. at 425).

[175] Opposition at 2.

risk; chilling effect; or tangible downstream harm, there is no case or controversy. Mr. Lyman's claimed injury is admittedly entirely informational, and under controlling authority, that is insufficient. The Lt. Governor's Motion to Dismiss is therefore GRANTED.

## 5   ORDER

IT IS HEREBY ORDERED that the Lt. Governor's Motion to Dismiss[176] is GRANTED.

IT IS FURTHER ORDERED that:

1.     Mr. Lyman's Motion for Summary Judgment[177] is FOUND MOOT.

2.     Lt. Governor's Motion for Relief funder Federal Rule of Civil Procedure 56(d)[178] is FOUND MOOT.

3.     The Clerk of Court is ordered to CLOSE THE CASE.

Signed January 14, 2026.

BY THE COURT

David Nuffer
United States District Judge

---

[176] Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), docket no. 18, filed August 4, 2025.

[177] Lyman's Motion for Summary Judgment, docket no. 17, filed July 29, 2025.

[178] Motion for Relief under Federal Rule of Civil Procedure 56(d), docket no. 33, filed November 24, 2025.